United States District Court
Southern District of Texas
**ENTERED**
April 28, 2021
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GERRY R. HILL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. H-19-3103 |
| | § | |
| SGT. BLAKENSHIP, *et al.*, | § | |
| | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

State inmate Gerry R. Hill has filed an amended civil rights complaint under 42 U.S.C. § 1983. Among others, he sued Warden Gregory Vaughn, Captain Carlos Applewhite, Sergeant Jeremy Zwar, and Sergeant Keith Tucker (collectively "Defendants"). (Docket Entry No. 18, 30).[1] Defendants have filed a joint motion to dismiss Hill's amended complaint. (Docket Entry No. 37). Hill has filed a response. (Docket Entry No. 44). Because Hill does not allege viable claims against Defendants, the court dismisses the claims against them, for the reasons explained below.

**I. Background**

Unless otherwise indicated, the facts in this section are taken from Hill's amended complaint and his response to this court's order for a more definite statement. (Docket Entry Nos. 18, 30). Most of Hill's allegations arise from a July 2019 disciplinary proceeding in which he was charged with "7.0 sexual abuse" based on his allegedly improper contact with another inmate in the prison yard. (Docket Entry No. 18, p. 10-11). Hill alleges that Defendants conspired to bring

---

[1] Hill's claims against defendants Jones, Ransom, Strong, Priestwood, Blankenship, Samford, and Cooley were previously dismissed with prejudice. (Docket Entry No. 24). Hill's claims against the current and former Executive Directors of the TDCJ and the current and former Directors of the TDCJ-ICD are the subject of a separate motion to dismiss, (Docket Entry No. 42), that will be addressed by separate order.

a false disciplinary charge against him for a variety of reasons and then conspired to cover up their misdeeds. (*Id.* at 9-11).

Specifically, Hill alleges that while presiding over the disciplinary hearing on the sexual abuse charge, Applewhite refused to permit Hill sufficient time to discuss the charge with counsel substitute and refused to watch a video of the incident. (*Id.* at 10). According to Hill, Applewhite also refused to allow him additional time to locate another witness who was allegedly at the scene. (Docket Entry No. 30, p. 2). Based on the evidence Applewhite did consider, he found Hill guilty of the charge. (Docket Entry No. 18, p. 11). After the finding of guilt, Vaughn placed Hill in administrative segregation, reduced his line class for 365 days, and forfeited some of Hill's good-time credits. (*Id.*). When Hill filed this § 1983 action, Vaughn and Tucker allegedly conspired to cover up the improper finding of guilt by reducing Hill's charge and restoring his good-time credits. (*Id.*). Hill also alleges that Zwar retaliated against him by confiscating his legal materials. (*Id.* at 10).

Defendants filed a joint motion to dismiss Hill's claims against them under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure. (Docket Entry No. 37). Hill filed a response. (Docket Entry No. 44).

## II.     The Legal Standards

A motion to dismiss under Rule 12(b)(1) is properly granted when the plaintiff lacks standing or when the claims alleged are barred by a state's sovereign immunity. *See High v. Karbhari*, 774 F. App'x 180, 182 (5th Cir. 2019) (per curiam) (citing *Little v. KPMG LLP*, 575 F.3d 533, 540 (5th Cir. 2009); *Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 240 (5th Cir. 2005)). "When a Rule 12(b)(1) challenge is raised alongside other Rule 12 challenges, the court should

address the Rule 12(b)(1) issues before reaching the merits." *Id.* (citing *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001)).

A motion to dismiss under Rule 12(b)(6) is properly granted when the plaintiff's complaint fails to state a claim upon which relief can be granted. A court reviewing a Rule 12(b)(6) motion must "accept[] all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *Powers v. Northside Indep. Sch. Dist.*, 951 F.3d 298, 305 (5th Cir. 2020) (internal quotation marks and citation omitted). "However, the plaintiff must plead specific facts, not mere conclusory allegations to state a claim for relief that is facially plausible." *Id.* (internal quotation marks and citation omitted). To withstand a motion to dismiss, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level[.]" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). If the complaint does not set forth "enough facts to state a claim to relief that is plausible on its face," it must be dismissed. *Id.* at 570.

Because Hill is representing himself, the court construes his filings liberally, subjecting them to "less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). But even under this lenient standard, self-represented litigants must still "abide by the rules that govern the federal courts." *E.E.O.C. v. Simbaki, Ltd.*, 767 F.3d 475, 484 (5th Cir. 2014) (quoting *Frazier v. Wells Fargo Bank, N.A.*, 541 F. App'x 419, 421 (5th Cir. 2013)). "*Pro se* litigants must properly plead sufficient facts that, when liberally construed, state a plausible claim to relief, serve defendants, obey discovery orders, present summary judgment evidence, file a notice of appeal, and brief arguments on appeal." *Id.* (footnotes omitted).

**III.   Analysis**

    **A.   The Official-Capacity Claims**

        **1.   Money Damages**

Defendants move to dismiss the claims for money damages against them in their official capacities under sovereign immunity. That doctrine bars actions against a state or state official unless Congress has abrogated such immunity or the state has specifically waived it. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989). Congress did not abrogate the states' Eleventh Amendment immunity when it enacted § 1983, *see id.*, and the State of Texas has not waived its immunity for § 1983 actions. *See Tex. A & M Univ. Sys. v. Koseoglu*, 233 S.W.3d 835, 839 (Tex. 2007) ("It is up to the Legislature to institute such a waiver, and to date it has not seen fit to do so."); *see also Putnam v. Iverson*, No. 14-13-00369-CV, 2014 WL 3955110, at *3 (Tex. App. − Houston [14th Dist.] Aug. 14, 2014, pet. denied) (reiterating that the Texas Legislature has not waived sovereign immunity for claims brought under § 1983).

The fact that Hill has sued state employees, rather than the state itself, does not change this analysis. When a government employee is sued in his or her official capacity, the employing entity is the real party in interest for the suit. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985) (explaining that official-capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent" and are "treated as a suit against the entity") (citations omitted). Hill's claims for money damages against Defendants in their official capacities are construed as claims against the State of Texas, are barred by sovereign immunity, and are dismissed.

4

### 2. Injunctive Relief

Hill also asks this court to enter an injunction against Defendants in their official capacities to protect him from future disciplinary proceedings, retaliation, beatings, and racial discrimination. A government official acting in his official capacity is not immune from suit under the Eleventh Amendment when the plaintiff seeks prospective injunctive relief to prevent an on-going violation of federal law. *Ex Parte Young,* 209 U.S. 123, 158-60 (1908); *Valentine v. Collier,* No. 20-20525, 2021 WL 1153097, at *3 (5th Cir. Mar. 26, 2021). But "[a] permanent injunction is appropriate only if a defendant's past conduct gives rise to an inference that, in light of present circumstances, there is a reasonable likelihood of future transgressions." *Valentine*, 2021 WL 1153097, at *2 (quoting *Sec. & Exch. Comm'n v. Life Partners Holdings, Inc.*, 854 F.3d 765, 784 (5th Cir. 2017) (internal quotations omitted)).

Hill's petition alleges no facts about Defendants' past conduct that would support an inference that they are likely to commit future transgressions. Hill alleges no facts to establish that he has been the subject of beatings or racial discrimination at the hands of Defendants. Hill also fails to allege sufficient facts to establish that Defendants have retaliated against him. And Hill is not entitled to an injunction to protect him against future disciplinary proceedings. *See, e.g., Sandin v. Conner*, 515 U.S. 472, 482 (1995) ("[F]ederal courts ought to afford appropriate deference and flexibility to state officials in trying to manage a volatile environment.); *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir. 1995) (noting that prisoners may not "insulate themselves from disciplinary actions by drawing the shield of retaliation around them"). Hill's claims for injunctive relief against Defendants in their official capacities are denied.

### B. The Individual-Capacity Claims

#### 1. The Conspiracy Claims

Hill alleges that Vaughn, Applewhite, Tucker, and Zwar conspired to file a false disciplinary report against him, allegedly because they knew Hill from prior institutions and disliked him. To state a viable conspiracy claim under § 1983, a prisoner must allege facts to show "(1) the existence of a conspiracy involving state action and (2) a deprivation of civil rights in furtherance of the conspiracy." *Pfannstiel v. City of Marion*, 918 F.2d 1178, 1187 (5th Cir. 1990), *abrogated on other grounds as recognized by Marion v. Thomas*, 973 F.2d 449, 455 (5th Cir. 1992). To establish the existence of a conspiracy, the prisoner must allege facts to show that the defendants agreed to commit actions that violated his constitutional rights. *See Arsenaux v. Roberts*, 726 F.2d 1022, 1024 (5th Cir. 1982). "A bald assertion that a conspiracy exists, unsupported by any factual allegations, is insufficient." *Thomas v. State*, 294 F. Supp. 3d 576, 610 (N.D. Tex. 2018) (citing *Lynch v. Cannatella*, 810 F.2d 1363, 1370 (5th Cir. 1987)).

Hill alleges no facts in his petition or response to the order for more definite statement to show that Defendants agreed with each other to commit any acts, much less acts that would violate Hill's constitutional rights. His unsupported allegation that a conspiracy exists is legally insufficient. Hill's conspiracy claims against all Defendants are dismissed.

#### 2. The Claims Against Vaughn

Hill alleges that Vaughn retaliated against him by placing him in administrative segregation, allegedly because Hill had filed complaints and grievances against Vaughn and his predecessors for racial discrimination and corruption. (Docket Entry Nos. 18, pp. 3-4, 9; 30, p. 3). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a

retaliatory adverse act, and (4) causation." *Morris v. Powell*, 449 F.3d 682, 684 (5th Cir. 2006) (quoting *McDonald v. Steward,* 132 F.3d 225, 231 (5th Cir. 1998)). The prisoner must allege facts to show that "but for the retaliatory motive the complained of incident . . . would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir. 1997) (quoting *Smith*, 60 F.3d at 1166 (citations omitted)). This requires "more than the prisoner's 'personal belief that he is the victim of retaliation.'" *Id.* (quoting *Woods v. Edwards*, 51 F.3d 577, 580 (5th Cir. 1995)). It requires the prisoner to "produce direct evidence of motivation or . . . allege a chronology of events from which retaliation may plausibly be inferred." *Smith*, 60 F.3d at 1166 (citation omitted). The claim will also fail if the prisoner is unable to point to a specific constitutional right that has been violated. *Tighe v. Wall*, 100 F.3d 41, 43 (5th Cir. 1996).

Hill's allegations against Vaughn fail to meet this standard. Hill alleges that Vaughn retaliated against him because he filed grievances—arguably a violation of his First Amendment right to "speak[] out." *Hartman v. Moore*, 547 U.S. 250, 256 (2006); *see also Morris*, 449 F.3d at 684 ("A prison official may not retaliate against or harass an inmate for complaining through proper channels about a guard's misconduct."). But Hill does not allege facts that show a retaliatory motive or a sequence of events from which retaliation can be inferred. Instead, the record plainly shows that Vaughn placed Hill in administrative segregation because Hill was found guilty of a disciplinary infraction. These facts do not demonstrate retaliation. Hill's retaliation claims against Vaughn are dismissed.

### 3. The Claims Against Applewhite

Hill alleges that Applewhite denied him due process during a disciplinary proceeding. (Docket Entry No. 18, p. 3). There are two types of due process protections: procedural and substantive. Procedural due process ensures fairness in the decision-making process "[b]y

7

requiring the government to follow appropriate procedures." *John Corp. v. City of Houston*, 214 F.3d 573, 577 (5th Cir. 2000) (quoting *Daniels v. Williams*, 474 U.S. 327, 331 (1986)). Substantive due process prevents governmental power from being "used for purposes of oppression." *Id.* (quoting *Daniels*, 474 U.S. at 331).

While prisoners generally have due process rights, "[p]rison disciplinary proceedings are not part of a criminal prosecution, and the full panoply of rights due a defendant in such proceedings does not apply." *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974). In prison disciplinary proceedings, procedural due process is satisfied if the prisoner is (1) given advance written notice of the alleged violation; (2) permitted to call witnesses and present documentary evidence when it will not be unduly hazardous to institutional safety; and (3) given a "written statement by the factfinders as to the evidence relied on and the reasons for the disciplinary action." *Id.* at 563-66. Substantive due process is satisfied if "there is any evidence in the record that could support the conclusion reached by the disciplinary board." *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455-56 (1985).

Hill does not allege that he was not provided with advance written notice of the charge against him or that he did not receive a written statement of the evidence upon which Applewhite relied. He alleges only that Applewhite did not watch a video of the alleged incident before ruling, which he contends was a denial of his right to present documentary evidence. (Docket Entry No. 18, p. 10). But Hill admits that counsel substitute asked to exclude the videotape from evidence. (*Id.* at 13). Under that circumstance, Applewhite's failure to watch the video is not a violation of procedural due process. *See, e.g., Arceneaux v. Pearson*, 449 F. App'x 396, 398 (5th Cir. 2011) (the fact that the hearing officer did not watch surveillance footage does not by itself render a disciplinary hearing unfair); *Neal v. Casterline*, 129 F. App'x 113, 115 (5th Cir. 2005) (hearing

8

officer's refusal to watch the videotape did not violate due process). Further, Hill admits that there was contact between him and the alleged victim, although he disputes the nature of the contact. (Docket Entry No. 18, p. 24). Because Hill admits that there is at least some evidence that the incident giving rise to the disciplinary violation had occurred, Hill has not shown that Applewhite violated Hill's substantive due process rights.

Hill also alleges that counsel substitute violated his procedural due process rights because he did not properly explain the charge against Hill, had the video excluded from evidence, and did not call the proper witnesses. (*Id.* at 13). But counsel substitute is not a proper defendant under § 1983, *see Banuelos v. McFarland*, 41 F.3d 232, 234 (5th Cir. 1995), and any errors by counsel substitute cannot be charged to Applewhite. Hill's due process claim against Applewhite is dismissed.

Hill also alleges that Applewhite retaliated against him by depriving him of due process during the disciplinary proceeding. To allege a viable claim of retaliation, Hill must allege sufficient facts to show "(1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris*, 449 F.3d at 684 (quoting *McDonald,* 132 F.3d at 231). In his pleadings, Hill alleges that Applewhite retaliated against him because Applewhite knew him from when they were both at the Coffield Unit. (Docket Entry No. 30, p. 2). Hill alleges no facts to show that Applewhite took any action in response to Hill's exercise of a constitutional right. He also does not allege facts to show that Applewhite had a motive to retaliate nor does he establish "a chronology of events from which retaliation may plausibly be inferred." *Smith*, 60 F.3d at 1166 (citation omitted). Hill's subjective belief that the incident is retaliatory, without more, is not sufficient. Hill's retaliation claim against Applewhite is dismissed.

9

### 4. The Claims Against Zwar

Hill alleges that Zwar improperly confiscated his legal materials, which denied him his constitutionally protected right of access to the courts. (Docket Entry Nos. 18, p. 10; 30, p. 1-2). The responsibility of prison officials to protect a prisoner's right of access to the courts is generally limited to "protecting the ability of an inmate to prepare a petition or complaint." *Wolff*, 418 U.S. at 576. To allege a viable claim based on the denial of access to the courts, the prisoner must allege both a deprivation and an injury as a result of that deprivation. *See Lewis v. Casey*, 518 U.S. 343, 349 (1996).

Hill alleges that Zwar took the legal materials Hill needed to file his § 1983 action and that the lack of these materials forced him to file a voluntary dismissal of his complaint between March and August 2017. (Docket Entry No. 30, p. 1). These allegations, on their face, show that Hill was not prevented from preparing his petition or complaint, only from prosecuting his previously filed case. These facts do not show that Hill was denied access to the courts. In addition, Hill alleges that Zwar confiscated the legal materials on August 20, 2018. (*Id.* at 2). The confiscation of legal materials in August 2018 cannot be the cause of voluntary dismissal Hill alleges he filed between March and August 2017. Hill's allegations do not support a claim for violation of his right of access to the courts, and this claim against Zwar is dismissed.

Hill also alleges that Zwar denied him his right of access to the courts in retaliation for Zwar's dislike of Hill, which allegedly started in 2013 when both Zwar and Hill were at the Eastham Unit. (*Id.*). The first step in alleging a claim of retaliation under § 1983 is to identify the constitutional right at issue. Hill alleges that he was deprived of his right of access to the courts. However, as discussed above, Hill's allegations do not show that he was deprived of this right. Hill does not "allege a chronology of events from which retaliation may plausibly be inferred."

10

*Smith*, 60 F.3d at 1166 (citation omitted). While Hill alleges that Zwar had accused Hill of homosexual activity when they were both at the Eastham Unit in 2013, Hill does not allege any facts to explain why this prior animosity would cause Zwar to retaliate against him six years later. Hill's retaliation claim against Zwar is dismissed.

### 5. The Claims Against Tucker

Hill alleges that Tucker retaliated against him by conducting "racially motivated investigations and harassment" and by reducing his disciplinary charge without notice or due process. (Docket Entry No. 18, p. 10). "To prevail on a claim of retaliation, a prisoner must establish (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Morris*, 449 F.3d at 684 (quoting *McDonald,* 132 F.3d at 231). This requires the prisoner to identify the constitutionally protected activity in which he was engaged and to "allege a chronology of events from which retaliation may plausibly be inferred." *Smith*, 60 F.3d at 1166 (citation omitted).

Hill alleges that Tucker retaliated against him because Hill had filed grievances against prison officials for corruption, drug trafficking, and racism. (Docket Entry No. 18, p. 10). These allegations identify a constitutionally-protected right. But Hill does not allege that any of the complaints or grievances were against Tucker or that Tucker knew of the grievances Hill had filed against others. Hill also fails to allege facts to show how reducing the severity of a disciplinary charge and reinstating good time credits constitute a "retaliatory adverse act." And Hill does not allege facts to show that a chronology of events from which retaliation can reasonably be inferred. Hill's claim against Tucker for retaliation is dismissed.

Hill also alleges that Tucker violated his due process rights by reducing the severity of his disciplinary charge and restoring his good time credits without notice. (Docket Entry No. 18, p.

11

10-11). The liberty interest of prisoners protected by the Due Process Clause is "limited to freedom from restraint which . . . imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 484. Hill does not allege facts to show that reducing the severity of his disciplinary charge and restoring his good time credits imposed either a restraint on his liberty or a significant hardship. He also alleges no harm from the alleged lack of notice. Hill's due process claim against Tucker is dismissed.

Finally, Hill alleges that Tucker violated his equal protection rights by favoring white and Hispanic inmates over black inmates. (Docket Entry No. 30, p. 5). "The Equal Protection Clause protects individuals from governmental action that . . . treat[s] similarly situated individuals differently." *John Corp.*, 214 F.3d at 577 (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). But "the Equal Protection Clause confers no substantive rights and creates no substantive liberties. The function of the Equal Protection Clause, rather, is simply to measure the validity of classifications created by state laws." *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 59 (1973) (Stewart, J., concurring). To allege an equal protection claim, Hill must not only "allege and prove that he received treatment different from that received by similarly situated individuals and that the unequal treatment stemmed from a discriminatory intent," *Taylor v. Johnson,* 257 F.3d 470, 473 (5th Cir. 2001), but he must also identify the law under which he was treated differently.

Hill's pleadings do not allege facts showing that Tucker violated his equal protection rights. While Hill alleges that Tucker favors white and Hispanic inmates over black inmates, he does not allege that Tucker took any specific action against him with a discriminatory intent. He also does not identify any law under which he was treated differently or any program or benefit that he was denied because of his race. Hill's equal protection claim against Tucker is dismissed.

## IV.     Conclusion and Order

The motion to dismiss filed by Defendants, (Docket Entry No. 37), is granted. The claims against Vaughn, Applewhite, Zwar, and Tucker are dismissed with prejudice and without leave to amend because amendment would be futile. All remaining pending motions are denied as moot. An order of dismissal is separately entered.

SIGNED on April 27, 2021, at Houston, Texas.

_____
Lee H. Rosenthal
Chief United States District Judge